## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARCELLUS A. FRENCH, SR.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-cv-01714-SPM** |
| **LATOYA HUGHES,** <br> **ANTHONY WILLS,** <br> **SANDY WALKER,** <br> **ANTHONY B. JONES,** <br> **DYE, and** <br> **LIEUTENANT LYNCH,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Marcellus French, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### MOTION TO SUPPLEMENT

In the First Amended Complaint, Plaintiff makes references to the writ of mandamus and attached exhibits he filed when he initiated this case. (*see generally* Doc. 14). He has filed a motion to supplement asking the Court to consider and utilize the exhibits attached to the writ of mandamus. (Doc. 17). Plaintiff states that at the time of filing the First Amended Complaint the e-

filing machine was inoperable, and he could not afford the copies and postage. Thus, he was unable to attach the exhibits to the First Amended Complaint.

The motion to supplement is **DENIED**. (Doc. 17). Plaintiff's First Amended Complaint supersedes and completely replaces the original pleading, rending it void. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). As such, an amended complaint must stand on its own without reference to any other pleading and must include all claims against all defendants and all supporting exhibits. Furthermore, exhibits are not required when filing a complaint pursuant to the Federal Rules of Civil Procedure. All that is required is a short and plain statement explaining what the defendants did or did not do to violate a plaintiff's constitutional rights. FED. R. CIV. P. 8. Accordingly, the Court will not consider Plaintiff's previous pleading and attached exhibits in conducting a review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A.

## THE FIRST AMENDED COMPLAINT

Plaintiff states that on July 2, 2024, he was involved in an "incident," and he was charged with "dangerous disturbance." (Doc. 14, p. 20, 26). He asserts that the charge was excessive, and the facts of the incident do not substantiate the charge. (*Id.* at p. 21). The disciplinary charge was heard before the Adjustment Committee, composed of Anthony Jones and Sandy Walker. Plaintiff alleges that he was deprived of a fair and impartial disciplinary hearing because at the time of the hearing, he was suing Jones in an unrelated civil matter. (*Id.* at p. 13). Additionally, Lieutenants Dye and Lynch were allowed to attend the hearing, even though they were the officers who escorted Plaintiff after the alleged incident to segregation, investigated the incident, and questioned Plaintiff about the incident. (*Id.* at p. 15). He complained to Adjustment Committee Member Walker about the potential bias of Jones and the two officers being present at the hearing. (*Id.* at

p. 17). Despite Jones, Dye, Lynch, and Walker being aware that the hearing was "tainted" by the presence of potentially unbiased individuals, Plaintiff was found guilty of the charge. (*Id.* at p. 18).

Plaintiff was sanctioned with ninety days in segregation, two months of C-grade status, two months of B-grade status, and restricted visits and telephone use. (Doc. 14, p. 19). Plaintiff alleges that the sanctions issued by the Adjustment Committee were excessive and harsher than sanctions received by other inmates, who are more aggressive and have more extensive disciplinary backgrounds than he. (*Id.* at p. 20).

While in segregation, Plaintiff claims he experienced inhumane conditions of confinement. (Doc. 14, p. 24). He did not have access to any indoor or outdoor recreation. (*Id.* at p. 19, 28). He was only allowed to shower ten times during the 90-day period, he was not provided sheets, towels, toothpaste, toothbrush, fan, and soap for seven days, and he went for thirteen days without a "seg bag," containing hygiene items. (*Id.* at p. 26, 27). Plaintiff asserts that the shower room was completely unsanitary and contained mold, urine stains, and rust. (*Id.* at p. 28). Plaintiff states that his cell flooded over four times with water that smelled of urine and feces. He was not given any sanitation or protection and had to clean his cell with his own towel. (*Id.*). Plaintiff alleges that "the environment [was] infested with bugs and insects." (*Id.* at p. 29). Plaintiff wrote emergency grievances about the inhumane conditions, and Warden Wills deemed the grievances "non-emergent." (*Id.*).

### PRELIMINARY DISMISSALS

In the First Amended Complaint, Plaintiff alleges that when he was examined by medical care personnel after the "incident," he complained about chronic back pain and muscle spasms. (Doc. 14, p. 26). He wrote an emergency grievance about these untreated medical conditions and the warden deemed the grievance an emergency, but he has not yet received proper care. (*Id.* at p.

27). Plaintiff also states he has not received adequate care for a toenail infection. (*Id.*).

Not only does it appear that these allegations are improperly joined in this action, as they do not relate to the majority of Plaintiff's assertions regarding due process violations that resulted in being held in unconstitutional conditions, but the allegations regarding denial of adequate medical treatment are not asserted against any named Defendant. Accordingly, to the extent Plaintiff intended to bring a claim for a constitutional violation regarding the delay or denial or medical care, such claims are dismissed. *See Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *Pepper v. Vill. of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005).

Throughout the First Amended Complaint, Plaintiff claims that Defendants violated IDOC rules and regulations. (*See* Doc. 14, p. 14, 20, 24, 31). Violations of state law or IDOC policy and regulations, however, do not amount to a constitutional violation. *See Wozniak v. Adesida,* 932 F.3d 1008, 1011 (7th Cir. 2019) ("[A] constitutional suit is not a way to enforce state law through the back door."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or…departmental regulations"); *Conner v. Hoem,* 768 F. App'x 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations." (citing *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002))). Therefore, Plaintiff has not stated a claim by alleging the Defendants failed to follow their own policies and procedures.

And finally, all claims are dismissed against Defendant Hughes. Plaintiff lists Director Latoya Hughes as a defendant, but he does not assert any allegations against her in the statement of claim. Under Section 1983, each defendant must be personally involved in the deprivation of a constitutional right. *See Matz v. Klotka*, 769 F.3d at 528. Furthermore, there is no *respondeat*

*superior* liability Section 1983. An individual cannot be held liable solely because of his or her supervisory position. Accordingly, Hughes shall be dismissed as a defendant.

DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:**    Fourteenth Amendment claim against Wills, Walker, Jones, Dye, and Lynch for punishing Plaintiff without due process of law.

**Count 2:**    Fourteenth Amendment equal protection claim against Wills, Walker, Jones, Dye, and Lynch.

**Count 3:**    Eighth Amendment claim against Wills for subjecting Plaintiff to unconstitutional conditions of confinement while in segregation.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

Count 1

To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn,* 933 F.3d 705, 720 (7th Cir. 2019). Prisoners are not entitled to Fourteenth Amendment due process protections unless they can establish the deprivation of a constitutionally protected interest in life, liberty, or property. *Williams v. Ramos,* 71 F.3d 1246, 1248 (7th Cir. 1995) (per curiam). A court reviewing a due process claim engages in a two-part inquiry: (1) was there a protected interest at stake that necessitated the protections demanded by due process; and (2) was the disciplinary hearing process conducted in accordance

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

with procedural due process requirements?

"Prisoners do not have a constitutional right to remain in the general population." *Isby v. Brown*, 856 F. 3d 508, 524 (7th Cir. 2017). *See also Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) ("an inmate's liberty interest in avoiding disciplinary segregation is limited") (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest "is triggered only when the confinement imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle*, 933 F.3d at 721 (internal quotations and citations omitted). In order to determine if a sentence of segregation amounts to an atypical and significant hardship, the Court looks "to both the duration of the segregation and the conditions endured." *Id.* (citing *Marion,* 559 F. 3d at 697).

Plaintiff claims that he was in segregation for 90 days and during that time his visitation privileges were restricted, and he was denied access to recreation and religious services. Additionally, Plaintiff asserts he went for thirteen days without certain hygiene items, he was only allowed to shower every nine days in a shower that was unsanitary, and over four times his cell flooded with dirty water, and he was not provided cleaning supplies. These conditions, as pled, do not establish that Plaintiff was denied a liberty interest, and so due process was not required prior to placing him in segregation. *See Hardaway,* 734 F.3d at 744 (inmate not deprived of liberty interest when he spent 6 months in segregation behind a steel door with a confrontational cellmate and had only weekly access to shower and prison yard); *Thomas v. Ramos,* 130 F. 3d 754, 760-61 (7th Cir. 1997) (inmate not deprived of an liberty interest when he spent 70 days in a small segregation cell with a cellmate and was denied access to classes, the gym, a work assignment, and day room access); *McCoy v. Atherton,* 818 F. App'x 538, 542 (7th Cir. 2020) (holding that 3 months in segregation in a dirty cell near physically and mentally ill inmates did not impose an

atypical and significant hardship); *Obriecht v. Raemisch*, 565 F. App'x 535, 540 (7th Cir. 2014)
(ruling that 78 days in "deplorable conditions" did not implicate a liberty interest, but that plaintiff
might have challenged the conditions of confinement while in segregation) (citing *Marion*, 559
F.3d at 697-98).

Even assuming that Plaintiff was deprived of a liberty interest, Plaintiff has failed to plead
that he was denied due process. In a situation where an inmate complains of discipline such as
segregation, or anything other than the loss of good-time credit, the disciplinary proceedings are
subject to an informal due process inquiry. Informal due process requires that an inmate is provided
(1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his
views in a written statement or hearing. *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024).
Informal due process also requires an impartial decisionmaker. *See Westerfer v. Neal*, 682 F. 3d
679, 686 (7th Cir. 2012). Adjudicators, however, are entitled "to a presumption of honesty and
integrity, ... and thus the constitutional standard for impermissible bias is high[.]" *Piggie v. Cotton*,
342 F.3d 660, 665–66 (7th Cir. 2003)

Plaintiff asserts that he was denied due process because Dye and Lynch, the officers who
investigated the disciplinary report, were present at the hearing and because he had named one of
the Adjustment Committee Members, Jones, as a defendant in a lawsuit. These facts do not
sufficiently plead that he was denied a fair and impartial disciplinary hearing in violation of the
Fourteenth Amendment. First, Plaintiff seems to believe that the hearing was "tainted" because the
presence of Jones, Dye, and Lynch violated departmental rules. (Doc. 14, p. 18). As discussed
above, the violation of state regulations or prison policies alone do not violate the Constitution.
Second, nothing in the First Amended allows the plausible inference that Jones was an impartial
decision maker. Although Plaintiff had named Jones as a defendant in Case No. 23-cv-2948-DWD,

Jones was dismissed from the lawsuit on March 1, 2024, prior to the disciplinary hearing, and was never actually served in that matter. *French v. Wills,* No. 23-cv-02948-DWD, Doc. 15 (S.D. Ill. Doc. *filed on* Aug. 29, 2023).[2] There is nothing in the First Amended Complaint indicating that Jones was even aware that Plaintiff had attempted to sue him, other than being "informed before the start of the hearing" by Plaintiff himself. (*See* Doc. 14, p. 18). And as the Seventh Circuit has observed, "requiring each staff member who is the subject of a separate lawsuit to disqualify himself from sitting in judgment of that inmate would heavily tax the working capacity of the prison staff." *Piggie,* 342 F. 3d 660, 667 (7 Cir. 2003) (citing *Redding v. Fairman,* 717 F.2d 1105, 1113 (7th Cir.1983)). Thus, Plaintiff has not pled an impermissible bias based on the fact that he had named Jones in a lawsuit and Lynch and Dye were present at the hearing. Accordingly, Count 1 is dismissed.

### Count 2

Because Plaintiff has not asserted that he was discriminated against due to his membership in a group or protected class, the Court construes the First Amended Complaint as alleging a "class-of-one" equal protection claim. To state a class-of-one equal protection claim, an individual must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). An allegation of improper motive, however, "does not necessarily overcome the presumption of rationality and permit" a case to move forward at the pleading stage. *D.B. ex rel. Kurtix B. v. Kopp,* 725 F. 3d 681, 686 (7th Cir. 2013).

Plaintiff claims that his equal protection rights were violated when he was denied and

---

[2] Court documents, including electronic docket information, are public records of which the Court can take judicial notice. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

deprived a fair and impartial disciplinary hearing and then sanctioned with an excessive sentence. (Doc. 14, p. 12, 16, 18). As an example that he was excessively punished, Plaintiff describes two inmates who have more extensive and aggressive disciplinary histories than he. He states that one inmate only received 28 days in segregation and the other received only 7 days in segregation when found guilty of their disciplinary reports "by Menard staff and Administration." (*Id.* at p. 20). Plaintiff asserts that the fact that these two inmates received less segregation time than him demonstrates "how the Adjustment Committee is failing at following the laws and policies set forth by IDOC and Menard CC Administration." (*Id.*).

Here, Plaintiff has not pled facts suggesting that the individual Defendants *intentionally* treated him differently from other inmates. It is not even clear that they were involved in the other disciplinary proceedings he references. Furthermore, Plaintiff's examples that other inmates received lesser segregation sentences than him only demonstrates the wide discretion prison officials have in issuing discipline – one inmate received 7 days and one received 4 times that amount. *See Abcarian v. McDonald,* 617 F. 3d 931, 939 (7th Cir. 2010) ("inherently subjective discretionary governmental decisions may be immune from class-of-one claims") (citing *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 603 (2008)). *See also Taliaferro v. Hepp,* No. 12-cv-921-bbc, 2013 WL 936609, at *6 (W.D. Wisc. Mar. 11, 2013) ("this court has held that class-or-one claims are likely never cognizable in the prison disciplinary context") (collecting cases). And finally, failing to follow departmental rules does not violate the constitution. For these reasons, Count 2 is dismissed.

### Count 3

"The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez*, 914 F.3d 1040, 1051

(7th Cir. 2019) (citations omitted). To establish an Eighth Amendment conditions of confinement claim, a plaintiff must first plead that the conditions alleged must be, objectively, "sufficiently serious." To be sufficiently serious, the conditions "must deny the inmate the minimal civilized measures of life's necessities, creating an excessive risk to the inmate's health and safety." *Id.* Next, a plaintiff must allege that the defendant had a subjectively, "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). In other words, a defendant must have known about the alleged excessive risk to Plaintiff's health or safety and had deliberate indifference toward that risk. Furthermore, the Seventh Circuit has specifically stated that it is not enough that a prison official "should have been aware" of the risk, *Quinn v. Wexford Health Sources, Inc.,* 8 F.4th 557, 566 (7th Cir. 2021), but they must have subjectively known of the substantial risk.

Plaintiff alleges that during his 90 days in segregation (1) he was only allowed to shower ten times; (2) the showers were unsanitary; (3) he was denied recreation and exercise; (4) his cell was flooded four times with water that smelled of urine and feces and he was not given supplies to clean his cell after each flooding; (5) he had urine thrown directly on him and nothing was done by staff or administration; (6) the "environment [was] infested with bugs and insects;" and (7) he was without sheets, towels, toothpaste, toothbrush, fan, or soap for seven days and other hygiene items for thirteen days. (Doc. 14, p. 26-29). Plaintiff states that he filed grievances regarding inhumane conditions, and Warden Wills denied every grievance. (*Id.* at p. 25, 28, 29).

Plaintiff asks the Court to consider and review the conditions of his confinement in segregation together in their totality. (Doc. 14, p. 26). The Court, however, will not view challenges to conditions of confinement in the aggregate and consider the conditions "in combination unless they have a mutually enforcing effect that produces the deprivation of a single, identifiable need

such as food, warmth, or exercise." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022).

The Court will allow Count 3 to proceed against Warden Wills to the extent Plaintiff claims he was housed in unsanitary and insect infested conditions caused by repeated flooding of his cell and a lack of cleaning supplies.

Count 3 is dismissed as to Plaintiff's other allegations, including lack of recreation time, limited and unsanitary showers, denial of hygiene items, and a single incident of having urine thrown on him. *See Johnson, 29 F. 4th at 904* ("90-day period of no yard privileges…does not inflict cruel and unusual punishment on an inmate in segregation") (citing *Pearson v. Ramos,* 237, F. 3d 881, 884 (7th Cir. 2001)); *Harris v. Fleming*, 839 F.2d 1232, 1234–36 (7th Cir. 1988) (no constitutional violation where prison officials failed to provide prisoner with toilet paper for five days and with soap, toothbrush, and toothpaste for ten days); *Harris v. Jones*, No. 20-1625, 2021 WL 4950248 at *2 (7th Cir. Oct. 25, 2021) (collecting cases and finding a "brief delay in receiving hygiene items" did not violate the Eighth Amendment); *Jaros v. Ill. Dep't of Corr.,* 684 F. 3d 667, 671 (7th Cir. 2012) ("limiting inmates to weekly showers does not violate the Eighth Amendment"); *Carroll v. DeTella*, 255 F.3d 470, 473 (7th Cir.2001) ("[F]ailing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not [cruel and unusual punishment].");*Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996) (prison's practice of allowing standing water to accumulate in the shower, which inmate feared could cause spread of communicable diseases, did not constitute the denial of minimal civilized measure of life's necessities).

### DISPOSITION

For the reasons set forth above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1** and **2** are **DISMISSED without prejudice. COUNT 3**

shall proceed in part against Warden Wills. Because there are no surviving claims against Hughes, Walker, Jones, Dye, and Lynch, the Clerk of Court **SHALL TERMINATE** these individuals as parties on the docket.

Because Plaintiff alleges that he was exposed to human waste and unsanitary conditions, which may have impacted his health, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Warden Wills the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the Defendant needs only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 3, 2025**

   *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.